The next case McCluskey v. University of Connecticut Health Center. Good morning, your honors. I'm Assistant Attorney General Colleen Valentine. You have to keep your voice up, please. Sorry. I'm here on behalf of the defendant appellant in this matter, the University of Connecticut Health Center, also known as UCHC. UCHC is here today requesting that this court reverse the district court's denials of UCHC's motion for summary judgment, motion for reconsideration of that denial, three motions for judgment as a matter of law, and the order of judgment in favor of the plaintiff. On the grounds that the court improperly determined that liability could be imputed to UCHC where UCHC exercised reasonable care in preventing and responding to sexual harassment in the or constructive notice that the plaintiff was being harassed at any time prior to the day that she reported it. It was the jury that made the finding, right? Yes, your honor. It was ultimately the jury that made the decision. However, before the case was submitted to the jury, there was significant motions practiced before the trial concerning this issue. How is the denial of summary judgment appealable? The issue was solely a matter of law, and there are limited circumstances under which When you say solely a matter of law, isn't it a question of fact whether the university was on notice of this? And the question is whether there was sufficient evidence for a jury to make that finding. So I would agree that that would be a question of fact. However, there are no facts pursuant to the law in this circuit that could support a finding that UCHC had failed to exercise reasonable care or that it either knew or should have done. You had a fellow against whom the university had already taken action, right? Yes, your honor. That action said that he would be monitored. Yes, your honor. He was not monitored.  Where is the evidence that he was monitored? Did not a reasonable jury find that he was not monitored given that the supervisor had no idea of any of this when an issue of his past when the issue did arise with respect to Ms. McCluskey? So, your honor, the incident that was referenced with respect to the harasser's previous conduct occurred in 2000, which was 11 years before the complaint was made in this case. And there As a matter of law, after how many years is it appropriate for the employer to stop any active monitoring? So I don't know that I can tell you that there's a bright line rule for when Well, if there's not a bright line rule, where is it, how would it, why would a jury not be entitled to make its own decision about whether the failure to notify the supervisor of the clinic that there was a dentist who was operating with female technicians in an isolated part of the clinic had a prior finding by the university itself of sexual harassment sufficient to warrant his suspension and sufficient to warrant the imposition of monitoring? So, your honor, I would start with the fact that I disagree with the finding that there was no monitoring. There was no evidence that he was not monitored. Is there any evidence that he was monitored? There is, your honor. Yes, absolutely there is. Tell me what that is. So the evidence that was submitted by Karen Wallace, she testified that in 2000 all of Dr. Young's supervisors were informed of everything that had occurred with respect to his disciplinary That's not monitoring. That's just telling him that it had happened in the past. And that's correct, your honor, but that was when it started. The issue here was that But what evidence is there that he was monitored? That's what you said. So the evidence is that the supervisors that were physically present within the dental unit were available at all times to the employees. They were physically located in close proximity to the assignments of their subordinates. They would walk through the hallways. The fact that harassment did go on is some evidence that he wasn't monitored. Your honor, I If they were monitoring him, presumably it wouldn't have happened. But that's not the law in this circuit. The employer is required to have cameras and to have someone physically monitoring an employee at all times. It's one piece of evidence that the harassment did occur. There was some notice for Dr. I can't remember his name now, to go and inquire. He did it in the hallway in full hearing of other people instead of, more appropriately, doing it in a private setting. Dr. Jindal, and I would disagree. If you add all these pieces up, why is that not enough evidence for a jury to find a constructive notice? So there were two pieces of evidence only that were submitted to the court and to the jury in support of a finding of constructive notice. The first was the incident that occurred in 2000. And as a matter of law, there's law in this circuit that says that simply having had a past incident You're doing exactly what, of course, we say you're not supposed to do, or what a district judge is not supposed to do, which is to take each piece and say each piece is insignificant. Let me put the two pieces together. Dr. Jindal hears from someone, apparently someone in whom Ms. McCluskey confided, that there was a situation, right? Yes, your honor. I take it you will not tell me that a jury could not infer that Dr. Jindal assumed that that situation, in quotes, had to do with sexual harassment. Your honor. Since Dr. Jindal then approaches the female underling of Dr. Young, doesn't approach the head of the dentist, the professional in charge, and say, is there some kind of problem of some unspecified notice? I mean, are you not getting the right kind of drills? She approaches the hygienist, the woman, the secondary party here, in terms of hierarchy and authority, and says, is there a situation? Seems to me, maybe you'll dispute it, that a jury could conclude that Dr. Jindal assumed that the situation was one involving potential sexual harassment. Do you disagree? I do disagree, your honor. There was no testimony from the individual who reportedly told Dr. Jindal that there was a concern, and the plaintiff admitted that she never referenced either Dr. Young or sexual harassment in connection with this discussion. When she had the discussion with Dr. Jindal. Let me ask you this. This is what's concerning me. I mean, I might agree that the evidence that this conduct should be imputed to the liability should be imputed to the hospital is thin. You might agree it's thin, but the issue for us is essentially no reasonable jury. So I don't understand your argument as to why no reasonable jury could reach this conclusion. Well, your honor, that comes to the second piece of our argument, which is that the jury instructions in this matter did not adequately inform the jury of what constructive notice. I'll just go back to Gendel. Do you think it would have been appropriate for Dr. Gendel to have this conversation in the hallway if she knew that Dr. Young, the person who worked most closely with Ms. McCluskey, the person who had reported a, quote, situation, had previously been found guilty by the employer of sexual harassment? Would that have been an appropriate response under those circumstances? I can't answer whether it would have been or wouldn't have been. There was conflicting testimony that that's what occurred. But could not a jury conclude that it would have been inappropriate, and this is not to blame Dr. Gendel, because she did not know about the prior incident, but could not a jury have put together the prior incident, the failure to notify the incoming supervisor whenever Dr. Gendel took over, that there was a potential problem with Dr. Young, and then the behavior of Dr. Gendel, which might have been appropriate, entirely appropriate in her view at that moment, not knowing of anything prior, to take such a casual approach to a situation presumably involving sexual harassment. That seems to me to be a perfectly reasonable thing for a jury to find. I might or might not have found that myself if I were a juror, but it certainly seems to me to be information that could be put together, right? Your Honor, the issue here is whether UCHC exercised reasonable care. There is no dispute that they maintained and enforced an anti-harassment policy at all times. There is no dispute that the plaintiff chose not to utilize that policy at any time. The plaintiff concedes that it was unreasonable that she did not utilize that policy. And if this situation involved a supervisor pursuant to the fairer affirmative defense, there would be no liability in this case, and it just can't follow. Because in that event, there would be no finding or no need to find negligence. And if it were a supervisor, it would automatically be imputed to the employer, and that's why there is a defense that blocks that kind of strict liability if there is a program. Once we're assessing the question of is there negligence, then the program and the failure to utilize the program and all these other facts, it seems to me, all go into the hopper as to how a jury decides whether there was negligence. I disagree. I think that the standard is more stringent when it comes to coworker liability. I think that that's entirely inconsistent with all of the established law in this area, that it's actually supervisor liability that is supposed to be a more strict standard because the employers are supposed to have more control over a supervisor than they do over all of their general coworker situations. And that's why it's actually supposed to be easier for an employee to prove harassment and to impute liability onto their employer when it's a supervisor. Automatic subject to a defense. And so in this case, it simply can't be logically. If the employer is actually found to have been negligent in steps to prevent this from taking place, there still can't be any imputation of liability if the harassed employee does not take advantage of the program for reporting. And I assume that is your position. Is there a case that you have that applies that in those circumstances? So I think that the law, as I personally have read it and as I understand it to be, is that the Fairgrant-Ellerth approach to supervisor liability issues versus the coworker liability issues is that really they're just two sides of the same coin and that the issue is if it's the supervisor who committed the harassment, then it's up to the employer to demonstrate that they exercised reasonable care and that the plaintiff had an opportunity to stop this and chose not to. It's the same question. Here the jury apparently found that the employer did not exercise reasonable care, right? Your Honor, I would agree that the jury did find that, but I would take issue with the jury instructions. You saved some time for rebuttal. We'll hear from your partner. Yes, Your Honor. Thank you. Good morning. May it please the Court. My name is Tani Saperstein. I represent the plaintiff, appellee Mindy McCluskey. The issue, as enunciated in the reply brief before this Court, is whether or not the defendant knew or in the exercise of reasonable care should have known about the sexual harassment of Mindy McCluskey by Dr. Young. And as Your Honors, in questioning my colleague, there was clearly sufficient evidence to support the jury verdict. The judge had several opportunities to look at the evidence in this case, both at summary judgment, which, by the way, was allowed in part because the strict liability prong of our claim was thrown out because it was determined that Dr. Young was not her supervisor. So it only went to the jury based on negligence. And the jury found and the jury fully deliberated. It was a four-day trial. The jury deliberated. The judge denied on several occasions the motions for judgment as a matter of law and the motions for reconsideration. And in his decision, Judge Saye perhaps said it the best. He said that a jury could have found the following, that there was a prior complaint with another dental assistant. Ten years ago, ten years before. Approximately ten years ago. That's correct, Your Honor. That's only one factor. That there was discipline that indicated. What was the hospital supposed to have done in that ten-year interval? Put up cameras? Well, actually, that's an interesting question. Assign someone to sit next to him? What were they supposed to have done? No, I don't think that that's required. I think what's required and what actually was in their sexual harassment policy is monitoring. Now, you have to keep in mind that this was in a jail. So it's not a normal. This was in a prison. Obviously. So you have. What were they supposed to have done? You have Ms. McCluskey and Dr. Young in an isolated environment with an inmate or else by themselves. So what they could have done is they could have walked by every now and then, perhaps. Because their. . . Walked by every now and then.   . . . . . . . . . . . . . . That doesn't make sense to me.       .   It doesn't make any sense to me. . . .  . . . They. . . How do you see what kind of conduct is to be engaged in if you walked by episodically? . She was asked about a situation in the workplace that was reported to Dr. Gemdell, who was Nerd Herr's and Dr. Young's supervisor. She said no. There wasn't any situation. What's the employee supposed to do in that? What she said was that it was under control and it was-discussion took place in the hallway. She could have walked 10 feet and sent an email, I'd like to follow up about this, if she was deterred about discussions in the hall. She could have. But the other evidence- You're going to say that one thing they could have done was make incoming supervisors of this clinic aware that there was a potential problem. Yes. It seems to me, at least, that that conversation that took place in a hallway, in which Ms. McCluskey does not say no one's ever bothered me. She says there are issues, but I have it under control. That to just walk away from that situation, that that situation would have been-that would not have been an appropriate way to handle that circumstance if Dr. Gemdell had known that Dr. Young, in effect, had a prior. And if I can respond to that, Your Honor, before- Didn't she subsequently ask to work-to be in a circumstance where she spent more time working with Dr. Young? An extra half day, that's right. She was a single mother and- What do you think? I'm going to-well- The woman is asked, and she says it's under control, and then she turns around and asks for an arrangement where she spends more time. What's the employer to think about all of this? Well, and the jury actually had that evidence, Your Honor. But in addition to that evidence, they had the evidence that after the initial complaint in 2000 occurred, that no subsequent supervisor was ever notified. And in fact, the testimony from Karen Duffy Wallace, who was responsible for both investigations, was that the university moved on. And I think Your Honor is right on point, that if Dr. Gemdell and subsequent supervisors had been informed we had a prior problem with Dr. Young, then when that conversation occurred, the normal reaction would be come into my office and would have been to explore it and follow up. Do we know-does the record indicate what Dr. Gemdell was told about the situation? It does not. It does not indicate that. But what-there was actually two complaints by Ms. McCluster-not complaints, but two notifications. One was to a coworker, and one was to a nurse who was a union representative. So one or both got to Dr. Gemdell. Dr. Gemdell admitted in testimony that she had no idea that there had been this prior situation because she hadn't been informed. Could I ask-one of the arguments that the defendant made at trial was that-a quite reasonable argument, it seems to me, that they were good guys. They responded very promptly once this was brought to their attention. They had this program that had been effective in at least getting Dr. Young suspended in 2000, and it was effective in getting him fired once there was a complaint. That argument was-about their program was made to the jury. Why would it have been-why wouldn't it have been appropriate for the judge to mention to the jury, among the other factors that he did mention as relevant to the negligence finding, the existence of that program? Of course, leaving it to the jury to decide what significance-what way to give it. Judge Shea actually didn't mention evidence on either side. He didn't mention any factors for the jury to take into account. My recollection-we have the jury instructions in the special appendix. My recollection was that he said that they should look at the totality of the circumstances, and the fact- Just left it at that. I'm sorry? Just left it at that. There were no- I don't recall him saying specifically, and actually in the special appendix is his decision as to why he commented on certain things. And what his concern was, if he said they had a policy and she didn't take advantage of it, then what would he have said on my side to balance the scale? And I think he was concerned about overemphasizing any piece of evidence, and he sent it to the jury. Which actually brings me, very briefly, to the point about the legal standard. The legal standard is about as settled as it can be, both from the Supreme Court from the early 90s and in this circuit, and I'm probably going to mispronounce this, but the Deutch case, D-U-C-H, where this court said that in co-worker sexual harassment, an employer can still be found liable even if they have a policy, and even if the plaintiff doesn't take advantage of it, if the employer knew or in the exercise of reasonable care should have known. And your theory about reasonable care is that over this 10-year period, they should have swung by the office and looked in. Well, actually it's more than that, Your Honor. What else is? My suggestion about reasonable care would be the same as in any work environment, although probably more in this particular work environment. And the investigative arm that did the investigation noted not only that Ms. McCluskey was credible, but that there was a huge concern about the isolation of the dental clinic. And, in fact, during their investigation, Dr. Young admitted to rubbing the shoulders of two other individuals. Also, University of Connecticut Health Center was not aware of that. So what most prudent employers would do would be they would monitor the workplace. And, in fact, that's- You keep throwing that term out. It's a term that has no content to it. Well, it does because it's in their sexual harassment policy. It says that we will monitor the workplace to keep it free of sexual harassment. And, actually, Judge Shea asked me that at the summary judgment hearing. And so my response then was you go by to the dental clinic. You say, how's everything going? Or you call in the dental assistant once in a while, especially if you know that there had been a prior instance of sexual harassment, but, of course, she didn't because they didn't tell her, and you say, is everything okay with the two of you? You make sure he gets more training. The only training that he got from 2000 until 2011 was the online training, and who knows if he even got that. And you monitor the workplace just like you would monitor any other workplace. You keep in touch with your employees. And perhaps most significantly, you tell subsequent supervisors, we've had a problem with Dr. Young in the past. You may want to check on him every now and then. And then when this conversation took place, you explore whether it's actually sexual harassment or, as Your Honor said, an issue with dental tools. So if you parse out each piece of evidence, is it enough to prevail? Most likely not, but the jury had all of that evidence. And both the jury, after they deliberated for several hours, as well as Judge Shea on several occasions, determined that there was sufficient evidence upon which to find the verdict. He cut your verdict in half, right? Excuse me? He cut your verdict in half. Well, not in half. What happened was we were he remitted it from 200,000 to 125,000 because the law in the Second Circuit is that if it's garden variety, emotional distress, you're capped at 125,000. That's the law in the Second Circuit as opposed to the First Circuit. So he cut it down to the maximum amount that we could get for garden variety emotional distress. And there were no lost wages. Thank you. Thank you. We'll hear the rebuttal. Thank you, Your Honor. I'd like to just respond to a couple of things. So with respect, there was a question asked about what evidence there was that monitoring had occurred. I just wanted to point the Court's attention to Joint Appendix 992, 1002 to 1004, 1059 to 60, 1134 to 50. And those pages demonstrate that the supervisors, in fact, did walk by. They did interact on a very regular basis with all of their subordinates. And the monitoring requirement was partially met through this sexual harassment policy that the employer is allowed to rely on having the employees have some responsibility to bring it to their attention. And the new or should-have-known standard that's been articulated in the Dutch case, that's about someone who is turning a blind eye to harassment that is quite clear and obvious in front of them, and they just don't want to see it. And that's- Or should-have-known is classic language of negligence. Would you not agree? I would. And I would- Turning a blind eye is classic willful ignorance or recklessness language, which is different. Is that not right? That is right. But the negligence- Why do you say that the negligence standard in Dutch is actually something different than what it says? The negligence standard requires that the danger be open and notorious, that there was an opportunity for the employer to know about it, and they didn't take any steps to do that. All of the case law that addresses this issue concerned cases in which supervisors got notice that something was happening, and they said, well, I don't really want to know about it. So that's why I'm using the turning a blind eye. That's specifically what I'm referencing. And so with respect to this case, the standard is reasonable care. The employer has to take reasonable care. And the employer maintained and enforced an anti-harassment policy at all times in this case. The plaintiff had an opportunity to use it. She knew how to use it. She was trained on it. She chose not to do so. And there is no evidence here that the defendant failed to exercise reasonable care or that they had actual or constructive notice that harassment was occurring and failed to take action. Thank you. Thank you very much. We'll reserve the decision.